## Case No. 10,460.

### OGDEN v. STRONG.

### [2 Paine, 584.] [1]

#### Circuit Court. [2]

CONSTRUCTION OF STATUTES—LEGISLATIVE INTENTION—THE TITLE—ENGLISH DOCTRINE.

1. The fundamental rule in construing statutes, is to ascertain the intention of the legislature. It is only in statutes of doubtful meaning that courts are authorized to indulge conjectures as to the intention of the legislature, or to look to consequences in the construction of a law. When the meaning is plain, the act must be carried into effect, or courts would be assuming legislative authority.

[Cited in Cory v. Carter, 48 Ind. 337; Buffham v. Racine, 26 Wis. 454; McCaul v. Thayer, 70 Wis. 149, 35 N. W. 353.]

2. In the construction of a statute, every part of it must be viewed in connection with the whole, so as to make all the parts harmonize if practicable, and give a sensible and intelligible effect to each; nor should it be presumed that the legislature meant that any part of the statute should be without meaning, or without force and effect.

[Cited in U. S. v. Reese, 92 U. S. 244.]

[Cited in Atlantic & P. R. Co. v. Mingus (N. M.) 34 Pac. 597; Harrington v. Smith, 28 Wis. 59.]

3. The doctrine held by English writers that the title of an act is no part of it, because added by the clerk, does not apply in the United States, where the legislature makes the title. But even though the title may not, strictly speaking, be a part of the act, yet it may serve in doubtful cases to explain and show the general purport of the act, and the inducement which led to its enactment.

[Cited in Hahn v. Salmon, 20 Fed. 809.]

4. Where, therefore, the title of an act of congress directing moneys to be paid out of the treasury to a widow and her children, was entitled "An act for the relief of the widow and children of B. W. H.," and there was nothing in the act from which a trust could fairly be raised, nor any intimation that the appropriation was intended for any other than their own private benefit, it was *held* that the moneys must be considered as given to the widow and children in their own right, and not as assets to go to the creditors of B. W. H.

[Cited in Rice v. U. S., 122 U. S. 611, 7 Sup. Ct. 1381.]

5. If a statute admit of a construction which will give effect and operation to every part, it ought never to be so construed as to draw after it unnecessary and superfluous provisions.

The complainant [Ogden] filed his bill against the defendant [Strong, administrator of B. W. Hopkins, deceased] to recover moneys paid by him as surety for B. W. Hopkins, upon custom-house bonds, judgments having been obtained against him by the United States on such bonds. The bill was founded upon an appropriation made by congress under an act of congress of February 11, 1830 [6 Stat. 404], by which $13,220 were directed to be paid to the widow and children of B. W. Hopkins; and the great question in the case was, whether this was to be

[1] [Reported by Hon. Elijah Paine, District Judge.]

[2] [District and date not given. 2 Paine includes cases from 1827 to 1840.]

considered as given to them in their own right, or as assets to go to the creditors of B. W. Hopkins.

THOMPSON, Circuit Justice. The complainant filed his bill for the purpose of reimbursing himself out of a specific appropriation by congress, for payments made by him as a surety of Benjamin W. Hopkins upon certain custom-house bonds, which payments were made upon judgments recovered against him upon such bonds. The bill sets out specially the bonds and judgments, and the payments made by the complainant—all which are not denied by the answer. The bill also sets out, at large, the act of congress by which the appropriation is made, and claims that this is a fund belonging to the estate of Benjamin W. Hopkins, and out of which, the complainant alleges, he is entitled to have satisfaction for the advances made by him as surety of B. W. Hopkins; and that, under the laws of the United States, he is a preferred creditor. The answer does not deny any of the material allegations in the bill, except that which relates to the liability of this fund to the payment of any claim against the estate of Benjamin W. Hopkins, but sets up that the appropriation was made for the use and benefit of the widow and children of B. W. Hopkins, and not in trust or for the use and benefit of any other person. In the argument at the bar, several objections have been taken to the mode and manner in which relief has been sought, even if any relief can be obtained. These may, however, be considered as mere formal objections, not involving the substantial merits of the case, and would not, if well founded, put an end to the cause. I shall, therefore, pass them by, and proceed at once to the merits of the case; and this depends entirely upon the construction of the act of congress which is set out at large in the bill. It is entitled "An act for the relief of the widow and children of Benjamin W. Hopkins," and is as follows: "Be it enacted by the senate and house of representatives of the United States of America, in congress assembled, that the secretary of the treasury be, and he is hereby authorized and directed to pay out of any moneys in the treasury not otherwise appropriated, to Harriet Strong, widow, Edwin W. Hopkins and Maria A. Hopkins, children of Benjamin W. Hopkins, deceased, the sum of $13,270, being for damages sustained by the said Benjamin W. Hopkins, in consequence of the government failing to furnish an engineer to lay out the fort at Mobile Point, at the time the contract commenced." To which a proviso is added, deducting therefrom $1,762 31, the amount of three judgments recovered against Benjamin W. Hopkins and his sureties upon custom-house bonds. The construction of this act is certainly not free from doubt. The great fundamental rule, in construing statutes, is to ascertain the intention of the

legislature. It is only in statutes of doubtful meaning that courts are authorized to indulge conjectures as to the intention of the legislature, or to look to consequences in the construction of a law. Where the meaning is plain, the act must be carried into effect by courts of justice, or they would be assuming legislative authority. It is a general rule of construction, that every part of a statute must be viewed in connection with the whole, so as to make all the parts harmonize, if practicable, and give a sensible and intelligible effect to each. It ought not to be presumed that the legislature intended any part of the statute should be without meaning, or without force and effect. It is observed, by the learned Mr. Dane, in his Abridgement of American Law (volume 6, p. 598, art. 5, § 11), that it is said, in many English books, that the title of a statute is no part of it, because the clerk adds it; but that this reason does not hold in the United States, where the legislature makes the title as much as the preamble or body of the statute. But although the title may not, strictly speaking, be any part of the act, yet it may serve, in doubtful cases, to explain and show the general purport of the act, and the inducement which led to the enactment. It is said, by the supreme court of the United States, in the case of Fisher v. Blight (2 Cranch [6 U. S.] 386), that the title of an act, when taken in connection with other parts, may assist in removing ambiguities where the intent is not plain; for where the mind labors to discover the intention of the legislature, it seizes everything—even the title—from which aid can be derived. The title of the act in this case may afford some aid in judging whether the appropriation was intended for the private benefit of the widow and children of B. W. Hopkins, or to constitute a part of his estate, and to be applied to the payment of his debts. If the former was the object and purpose of the law, it is in harmony with the title; but if the latter was the intention, there could be no propriety in calling it an act for the relief of the widow and children of B. W. Hopkins. Such a title would be at war with the enacting clause; it should have been an act for the relief of the creditors of B. W. Hopkins, and the fund would probably have been placed in the hands of his personal representatives. The bill alleges that B. W. Hopkins died insolvent, and this is not denied in the answer. Whether this fact was known to congress does not appear from the act itself, but the fact is pretty clearly to be inferred from the petition upon which the law was passed; and as it expressly alleged in the bill, it is no more than reasonable to conclude that the law was passed with full knowledge of this fact, and would have been so framed as to meet such a state of things, if it had been intended that it should be considered a part of B. W. Hopkins' estate. The doubt which is thrown upon the construction of this act arises from the statement which it contains as to the consideration upon which the appropriation is made, viz., for damages sustained by Hopkins by reason of the non-fulfilment of the contract between him and the government. Had this been omitted, the act would clearly have admitted of no other construction, than that the appropriation was intended, as indicated by the title, for the relief of the widow and children of B. W. Hopkins; not only the title of the act shows the money was intended for the private benefit of the widow and children, but it is given to them by name, without any words from which a trust can fairly be raised, or the least intimation that it was intended for any other than their own private benefit. The consideration or inducement upon which the act is alleged to have been passed, being the damages sustained by Hopkins, certainly affords some strong equitable grounds for concluding that the money ought to have been applied to the general benefit of Hopkins' estate. But this was a question resting with congress, and will not authorize the court so to consider it, unless such is the construction warranted by the act; and it appears to me that this circumstance is not sufficient to outweigh other parts of the act indicating an intention of a personal benefit to the widow and children. This may well be considered as thrown in for the purpose of showing it was not a mere donation without any consideration, but founded upon a just claim. Suppose there had been no debts due from Hopkins, and he had left other children than those named in the act, if this money constituted a part of Hopkins' estate, such other children, in the case supposed, would come in for their distributive share; but I apprehend the act would not admit of such construction. The petition upon which the law was passed is made a part of the answer; and if we look to the facts there stated, satisfactory reasons appear for limiting the appropriation to the personal benefit of the widow and children. The petition states, that it was required on the part of the United States, in order to enable them to transfer the contract with Hopkins to Hawkins, that she should relinquish her claim to certain property, which she accordingly did; that she was to have received therefor, from Hawkins, for the benefit of herself and children $20,000, no part of which, however, had been paid her; and that she and her children have been left wholly destitute. As this relinquishment was at the instance of the United States, it furnished some equitable considerations for compensating her in part, at least, for the injury she had sustained. The proviso in the act requiring certain debts due to the United States, to be deducted from the appropriation, goes in some measure to corroborate and strengthen the construction, that the money was intended for the private benefit

of the widow and children; for, if it constituted a part of the estate of Hopkins, and he died insolvent, the United States, by the existing law, would be entitled to priority of satisfaction, and the proviso would be superfluous; and a statute ought never to be so construed as to draw after it such consequences, if it will admit of a construction which gives effect and operation to every part. Such must be presumed to have been the intention of the legislature, and not that any unnecessary and superfluous provision had been made. Upon the whole, although the claim of the complainant is supported by many equitable considerations, we cannot sustain it upon what we think is the fair construction of the act upon which it rests. The bill must, accordingly, be dismissed with costs.